MRS. BERTIE LEE SUTTLE v. WESTERN UNION TELEGRAPH COMPANY.

(Filed 21 October, 1908.)

1. **Telegraph Companies—Office Hours—Waiver.**

   When the agent of a telegraph company receives a message for transmission, and undertakes with the sender to deliver it at a time not within its reasonable office hours at its destination, the benefit of the office hours is waived.

2. **Telegraph Companies—Proximate Cause—Notice of Importance of Message.**

   In an action against a telegraph company for its wrongful failure to deliver a message to the wife of the sender informing her that he was in a railroad wreck, but not hurt, it was shown that in fact the sender was hurt in the wreck; that he informed the company's agent at the time the message was sent that he knew his wife would hear of the wreck and spend a miserable night; that the message was not delivered until the next morning, and the wife passed a night of mental anguish, having heard of the wreck of the train on which she expected her husband and not having been able to hear with certainty as to his condition, though she heard that he was hurt: *Held*, (1) the notice given to the agent at the time the message was filed for transmission was sufficient for a recovery of damages against the company for the mental anguish sustained that night by the wife; (2) that the negligence of the company was the proximate cause of the injury.

ACTION heard by *Long, J.,* at December Term, 1907, of JOHNSTON.

This action was brought to recover damages for failing to deliver a telegram, and was heard below on a case agreed, which is as follows:

It is admitted by counsel on both sides that the telegram set out in the complaint was delivered to the agent of the defendant, at Raleigh, N. C., at 7:27 o'clock P. M., 19 May, 1903, and was received by the operator at Smithfield, agent of defendant, at 8:25 P. M. on the same night; that the message was delivered to Mrs. Suttle at 9 o'clock A. M. the

next day, to-wit, 20 May, 1903, and that the business hours of the Western Union Telegraph Company at Smithfield are from 8 A. M. to 8 P. M.

The court, by consent of the parties, found the following facts from the depositions submitted:

1. The plaintiff's husband, J. W. Suttle, left Smithfield on the morning of 19 May to spend the day in Raleigh, expecting to return to Smithfield on the afternoon train, and he so told his wife before leaving home that morning.

2. The plaintiff's husband, J. W. Suttle, did not return to Smithfield on the afternoon of 19 May, because the train on which he was returning to Selma was wrecked, but he returned to Raleigh from the wreck, and at 2:27 P. M. filed with the defendant's agent at Raleigh the telegram set out in the complaint and addressed to his wife, Mrs. J. W. Suttle, Smithfield, N. C., which was as follows: "Esta and I were in wreck; not hurt; will be home to-morrow."

3. In addition to the notice of the importance of the prompt delivery of said telegram appearing from the face of the message, the said J. W. Suttle, at the time of delivering the message, asked the operator if the message would be delivered to his wife that evening, and was told by the operator that it would. J. W. Suttle said to the operator that if he thought it would not reach her that evening he would be compelled to drive home through the country, because he knew his wife would hear of the wreck and would spend a miserable night, not knowing whether he was hurt or not in the wreck.

4. By reason of the failure to deliver the telegram promptly on the evening of 19 May, 1903, the plaintiff, Mrs. Suttle, suffered great mental anguish, as described by her. If the telegram had been promptly delivered upon its receipt at Smithfield, to-wit, 8:30 o'clock P. M., 19 May, 1903, the *feme* plaintiff would not have suffered the mental anguish, as testified to by her.

148—31

5. Notwithstanding the facts set out in the telegram, Mr. Suttle did receive certain hurts. by the wreck, which are set forth in the evidence.

Upon the admission of counsel for plaintiff and defendant, and the finding of facts by the court, it is considered by the court 'that the defendant was guilty of negligence in failing to promptly deliver the telegram set out in the complaint to the *feme* plaintiff, and that the plaintiff recover of the defendant the sum of $175, together with the costs of this action, to be taxed by the Clerk.

It was agreed that if the plaintiff is entitled in law to recover, the damages should be assessed at $175.

The defendant excepted to the judgment of the court and appealed.

*Pou & Brooks* for plaintiff.
*R. C. Strong* for defendant.

Walker, J., after stating the case: It is too late now to question the proposition that if a telegraph company receives a message from the sender and undertakes to deliver it to the sendee at a time not within its office hours, it is its legal duty to do so, because of the special undertaking, which constitutes a waiver by it of the benefit of office hours. It may prescribe office hours when they are reasonable, but it may also waive them if it sees fit to do so. *Bright v. Telegraph Co.,* 132 N. C., 317; *Kernodle v. Telegraph Co.,* 141 N. C., 436; *Carter v. Telegraph Co.,* 141 N. C., 374; *Dowdy v. Telegraph Co.,* 124 N. C., 522. In this case the company, by its operator and agent, expressly agreed that the message would be delivered to Mrs. Suttle that evening, and he was specially and fully advised of the importance of a speedy delivery to her. There could hardly be more detailed information of the nature and importance of the message or of the reason why an early delivery to the sendee was desired.

The company was fully aware of the fact that if the delivery of the message was delayed until the next morning the object for sending it would be defeated, and, too, that the sendee, Mrs. Suttle, would suffer mental anguish. The sender informed the operator that he would drive to his home that evening if the message could not be delivered at once, and thereby relieve his wife's anxiety, as she would be sure to hear of the accident; that he expected to return home that afternoon, and his failure to do so, together with the knowledge of the accident by his wife, would be sure to cause her mental distress. The case is a plain one for the application of the rule laid down in the cases cited. Indeed, it is much stronger against the company than were the facts in any one of them.

The defendant's counsel contends that, as the information contained in the message was false, the delayed delivery was not the proximate cause of the injury, and that the meaning or import of the message did not appear on its face and was not communicated to the operator. He reasons from this that the damage to the *feme* plaintiff was not within the contemplation of the company and the plaintiff when they entered into the contract for the transmission of the message. We have held, it is true, that the company must be notified in some way that mental anguish will naturally and reasonably follow as a result of its negligence, and this information must be imparted to it by the contents of the message itself or by facts within its knowledge at the time, or brought to its attention at the time of receiving the message for transmission. *Williams v. Telegraph Co.,* 136 N. C., 82; *Cranford v. Telegraph Co.,* 138 N. C., 162; *Bowers v. Telegraph Co.,* 135 N. C., 504. But in this case the evidence is plenary that the company was fully informed as to the nature of the message, its meaning and import, and could easily have inferred, if it was not directly and explicitly told, what the consequence of delaying the delivery until the next morning would be. It cannot close its mind to the knowledge of facts which are

apparent, and thus plead its own ignorance as an excuse for its failure to deliver the message. If it carelessly disregarded the information it received, and its evident import, its fault in this respect is not to be imputed to the plaintiff, so as to bar her right to damages. The operator was told by Mr. Suttle what his purpose was in sending the message and in asking for a prompt delivery that evening. It was to avoid the very thing that has occurred, and which every reasonable man, mindful of his obligation to others, should have known would occur. The delay of the company was clearly the proximate cause of the injury. The case of *Dayvis v. Telegraph Co.,* 139 N. C., 79, seems to be a direct authority sustaining the ruling of the court. In that case it is said by *Justice Hoke:* "This message was sent to prevent anxiety in the plaintiff's mind, and but for the defendant's default would have fulfilled its mission."

We have carefully examined the objections to the testimony, and find no error in the rulings of the court upon them. They seem to be fully answered by what we have said on the merits of the case.

There is no error in the decision upon the admissions of counsel and the facts found by the court.

Affirmed.